Michael D. Stanger (#10406)
Jessica J. Johnston (#14687)
Ellen H. Welch (#18126)
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
Telephone:   (801) 532-7080
Facsimile:   (801) 596-1508
mstanger@strongandhanni.com
jjohnston@strongandhanni.com
ewelch@strongandhanni.com

*Attorneys for Defendant DiscGenics, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LARA SILVERMAN, PhD and JEFFREY POOLE,<br><br>          Plaintiffs,<br><br>vs.<br><br>DISCGENICS, INC.,<br><br>          Defendants. | **DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:22-cv-00354-DBP<br><br>Judge Dustin B. Pead |

Defendant DiscGenics, Inc. ("DiscGenics"), by and through counsel, and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, moves to compel arbitration of all claims asserted by Plaintiffs Lara Silverman and Jeffrey Poole in the Complaint they filed on May 23, 2022,[1] according to the terms of the arbitration provisions contained in the parties' agreements and either dismiss the claims brought by Plaintiffs in their entirety or, in the alternative, stay the proceedings pending the outcome of the arbitrations.

---

[1] Docket No. 2.

## FACTUAL BACKGROUND

*The Parties and their Agreements to Arbitrate*

1.      DiscGenics is a privately held, clinical stage biopharmaceutical company focused on developing regenerative cell-based therapies that alleviate pain and restore function in patients with degenerative diseases of the spine.[2] *See* DiscGenics Policies and Procedures attached hereto for the Court's convenience as Exhibit A.

2.      In 2011, Silverman joined DiscGenics, and was ultimately employed as its Senior Diretor of Research and Development.[3]

3.      On February 14, 2020, Silverman signed an updated handbook on February 14, 2020 that contained a mandatory arbitration agreement as follows:

MANDATORY ARBITRATION AGREEMENT

As an Employee of DiscGenics, Inc., I agree as follows:

I agree that any dispute or controversy which would otherwise require or allow resort to any court or other governmental dispute resolution forum, between myself and DGX (or its owners, president, directors, officers, employees, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, DGX, whether based on tort, contract, statutory or equitable law, or otherwise, shall be submitted to and determined by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Utah Uniform Arbitration Act (Utah Code Annotated at Title 78B, Chapter 11, Sections 78B-11-101 through 131); provided however, that in addition to the requirements imposed by law, any arbitrator herein shall be a retired Utah District Court judge unless otherwise agreed to in writing by both parties; all rules of pleading (including the right of demurrer and summary judgment), and of evidence applicable to civil actions in Utah courts

---

[2] *See id.* at ¶ 18.
[3] *See id.* at ¶¶ 3, 16.

shall apply; resolution of the dispute shall be based solely upon the law governing the claims pleaded, and the arbitrator may not invoke any basis other than such controlling law, including, but not limited to claims of "just cause"; and at either party's request, awards, inclusive of all monetary sums awarded to either party, shall be subject to reversal, modification, or reduction following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedure applicable to appellate review by the Utah Court of Appeals of a civil judgment following court trial. The fees of the arbitrator shall be paid by DGX if required by law. If the law does not require DGX to pay the arbitrator's fees, then they shall be paid pursuant to written agreement between the parties.

I understand that by agreeing to this binding arbitration provision, both I and DGX give up our respective rights to a trial by jury.

Should any provision of this agreement be held by a court or arbitrator to be invalid, or contrary to law, the remaining provisions shall remain in force and effect.[4]

4.      In 2020, Jeffrey Poole was hired as DiscGenics' CFO.[5]

5.      Poole signed two agreements to arbitrate any dispute with DiscGenics.

6.      First, his employment agreement[6] contains an agreement to arbitrate:

> 14. **ARBITRATION**. In the event a Dispute cannot be resolved through good faith negotiations, the parties agree that any dispute arising out of this Agreement shall be resolved through arbitration in accordance with the then current Employment Arbitration Rules of the American Arbitration Association or any successor organization (the "AAA"). The party desiring to initiate the arbitration process shall give written notice to that effect to the other party and shall, in such written notice, include a brief statement of its claims. Within ten (10) days of the note of intent to arbitrate, the parties shall meet for the purpose of attempting to jointly select a single arbitrator to serve in the matter. If they are unable to agree on the designation of the arbitrator, either party may apply to the AAA for the appointment of a single arbitrator in accordance with the rules of the AAA then in effect. The arbitration proceeding shall be held within 60 days of the appointment of the arbitrator and the arbitrator shall render his or her decision within 30 days after the conclusion of the arbitration proceeding. The decision of the arbitrator shall be final and binding upon, and non-appealable by, the parties and any judgment may be had on the decision and award so rendered in any court of competent jurisdiction. The prevailing party shall be entitled to all costs incurred in connection with the arbitration proceeding, including the fees of the arbitrator, its reasonable attorneys' fees, witness fees and other costs as determined by the arbitrator.

---

[4] *See* DiscGenics Handbook, pp. 47-48 (with Silverman signature), attached as Exhibit A; *see* also Ms. Silverman's signature page, attached hereto as Exhibit B.

[5] *Complaint*, Docket 2, at ¶ 7.

[6] *See* Employment Agreement, ¶14, attached hereto as Exhibit C.

7.      Poole also signed an employee handbook with a mandatory arbitration provision on August 18, 2020, with language identical to the arbitration obligations agreed to by Silverman.[7]   Silverman's and Poole's handbook-based arbitration agreements are referred to herein as the "Handbook Agreements."

8.      The Handbook Agreements specifically state that the arbitrations shall be conducted "under the Federal Arbitration Act."[8]

9.      Poole was terminated from his position with DiscGenics on June 4, 2021.[9]

10.     Silverman resigned on June 25, 2021, and her final day of employment with DiscGenics was July 1, 2021.[10]

11.     Poole filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division ("UALD") on July 30, 2021.[11]

12.     Silverman filed a Charge of Discrimination with the UALD on August 6, 2021.[12]

13.     The matter was investigated, and Plaintiffs were given a right to sue letter on March 24, 2022.[13]

14.     On May 23, 2022, Plaintiffs filed a Complaint in the United States District Court for the District of Utah.[14]

15.     The Complaint included a cause of action for Discrimination in violation of Title VII on behalf of Ms. Silverman, and a cause of action for Retaliation in violation of Title VII on

---

[7] *See* Poole Signed Employee Handbook attached as Exhibit D, at pp. 47-48.
[8] *See* Exhibits A and D, both at p. 47.
[9] *See* Complaint, Docket No. 2, at ¶¶ 178-87 (describing circumstances of termination).
[10] *See id.* at ¶ 228.
[11] *See id.* at ¶ 21.
[12] *See id.* at ¶ 22.
[13] *See id.* at ¶ 23.
[14] Docket No. 2.

behalf of both Plaintiffs.[15] (*See* Complaint ¶¶  ).

16.     When reminded of the arbitration provisions they signed, Plaintiffs have, through counsel, declined to arbitrate because they believe that the *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021*, signed by President Biden on March 2, 2022, exempts their claims from arbitration.

## ARGUMENT

The claims asserted in Plaintiffs' Complaint are subject to mandatory arbitration pursuant to a valid and enforceable arbitration provision contained in the parties' Agreement.

### I.     THE FAA APPLIES TO PLAINTIFFS' ARBITRATION AGREEMENT WITH DISCGENICS, BOTH AS A MATTER OF LAW AND BY AGREEMENT.

The FAA applies to all written arbitration agreements "involving commerce," 9 U.S.C. § 2, and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[16]  The term "involving commerce" should be broadly construed and reaches all contracts "relating to" interstate commerce.[17]  The parties here not only agreed that the FAA would govern any arbitration, but, by virtue of DiscGenics' biopharmaceutical research and inevitable interstate implications of the same, are engaged in commerce within the meaning of the FAA.

The FAA reflects a "liberal federal policy favoring arbitration agreements," and declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds

---

[15] *See id.* at ¶¶ 231-43.
[16] *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131–32 (10th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).
[17]  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967); *see also Allied-Bruce Terminix Companies, Inc., v. Dobson*, 513 U.S. 265, 273–74 (1995) (holding that "involving commerce" is the functional equivalent of "affecting commerce").

as exist at law or in equity for the revocation of any contract."[18]  Because of this presumption in

favor of arbitration, the FAA "leaves no place for the exercise of discretion" if there is a valid,

applicable agreement, and courts must "rigorously enforce" arbitration agreements according to

their terms.[19]

Accordingly, the FAA obliges courts to stay litigation on matters that the parties have

agreed to arbitrate and authorizes a federal district court to compel arbitration when it would

have jurisdiction over a suit on the underlying dispute.[20]

Determining whether a dispute is subject to arbitration involves two considerations: (1)

whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within

the scope of that agreement.[21]  Both conditions are met here.

## II.   THE ARBITRATION PROVISION IN PLAINTIFFS' AGREEMENTS WITH DISCGENICS IS VALID AND ENFORCEABLE.

Plaintiffs' Agreements with DiscGenics contain arbitration provisions that are valid and

enforceable.  Generally, courts "should apply ordinary state-law principles that govern the

formation of contracts" to determine whether there is a valid arbitration agreement.[22] However,

this consideration of state law is limited to principles of contract law concerning the

---

[18] 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24; *BOSC, Inc.*, 853 F.3d at 1169–70.

[19] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985).

[20] 9 U.S.C. §§ 3, 4; *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 770–71 (10th Cir. 2010).

[21] *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986); *see Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1278 (D. Utah 2017).

[22] *Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 475–76 (10th Cir. 2006); *Mitchell*, 280 F. Supp. 3d at 1278.

enforceability of contracts in general, and state law cannot displace the strong federal policy in favor of arbitration of disputes.[23]

Under Utah law, the formation of a contract requires an "offer, an acceptance, and consideration."[24] "An offer is a manifestation of willingness to enter into a bargain, and an acceptance is a manifestation of assent to the offer, 'such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made.'"[25] The proponent of the contract must only show that an offer and acceptance were "more probable than not."[26] "Consideration is present when there is an act or promise given in exchange for the other party's promise."[27]

Here, Mr. Poole accepted DiscGenics' offer by signing the Employment Agreement and the Employee Handbook, and beginning work as the CFO.[28] Ms. Silverman accepted DiscGenics' offer of continued employment by signing the Employee Handbook containing the arbitration provision. These agreements are also supported by adequate consideration because the parties exchanged binding, mutual promises to arbitrate, and DiscGenics' right to modify the Agreement is restricted by notice requirements.[29]

---

[23] *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012)
[24] *Mitchell*, 280 F. Supp. 3d at 1280 (citing *Cea v. Hoffman*, 2012 UT App. 101, ¶ 24, 276 P.3d 1178, 1185).
[25] *Id.* (quoting *Cea*, 2012 UT App ¶¶ 24-25).
[26] *Id.* (quoting *Cea*, 2012 UT App ¶ 27).
[27] *Id.* (quoting *Cea*, 2012 UT App ¶ 26).
[28] *See Born v. Progrexion Teleservices, Inc.*, No. 2:20-CV-00107, 2020 WL 4674236, at *11 (D. Utah Aug. 11, 2020)(discussing *Hardin* as standing for the proposition that an employee's continued employment manifests intent to be bound by the terms of an arbitration agreement).
[29] *See, e.g., Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985) ("Consideration is an act or promise, bargained for and given in exchange for a promise."); *see J.R. v. Utah*, 261 F. Supp. 2d 1268, 1271 (D. Utah 2002) (citing *Resource Management* and stating that the parties' mutual exchange of promises constitutes

Therefore, there is a valid arbitration agreement here, supported by consideration, and the first condition is satisfied.

## III.   PLAINTIFFS' CLAIMS ARE ALL WITHIN THE SCOPE OF THE AGREEMENTS TO ARBITRATE.

The claims raised in Plaintiffs' Complaint all fall within the scope of the arbitration provision. In determining whether a dispute falls within the scope of an arbitration provision, a court must first classify the particular arbitration provision as broad or narrow. Here, the provision in Poole's Employment Agreement is broad because it provides that all claims "arising out of this Agreement" will be resolved through arbitration.[30] The Handbook Agreements, in turn, are also broad because they provide for arbitration of "any dispute or controversy…arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, [DiscGenics], whether based on tort, contract, statutory or equitable law, or otherwise…."[31]

Where, as here, the arbitration provision is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."[32] In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, … only the most forceful evidence of a purpose to exclude the claim from arbitration

---

consideration); *see also Williams-Jackson v. Innovative Senior Care Home Health of Edmond, LLC*, 727 F. App'x 965, 969 (10th Cir. 2018) (finding adequate consideration under Oklahoma law where there were mutually exchanged promises to arbitrate and defendant did not have an unrestricted right to modify the agreement without notice); *Hardin*, 465 F.3d at 478–79 (same).
[30] Ex. C; *see P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (stating that an arbitration provision covering any controversy, claim, or breach "arising out of or relating to this Agreement" was a broad one); *Sanchez*, 762 F.3d at 1146–47 (collecting cases).
[31] Exs. A and D, both at p. 47.
[32] *Sanchez*, 762 F.3d at 1146.

can prevail."[33]  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[34]

Plaintiffs' claims all fall within the scope of the parties' broad arbitration provision because they all stem from and involve their Agreements with and/or employment by DiscGenics and implicate the parties' rights and obligations under the Agreements, or as employer/employee. Indeed, the Complaint alleges that DiscGenics discriminated against Ms. Silverman in the "terms and conditions of her employment"—all in violation of the parties' Agreement.[35]  Both Plaintiffs allege that they were unlawfully retaliated against after they engaged in protected activity by, "*inter alia,* excluding Silverman from meetings and discussions, ignoring her complaints of discrimination, removing her direct reports from her supervision, and by, *inter alia,* firing Poole."[36] Because Poole's claims arise out of and relate to his Employment Agreement, and because both Plaintiffs'' claims arise out of their employment by DiscGenics, they are subject to mandatory arbitration under the liberal federal policy favoring arbitration. Therefore, all claims asserted in the Complaint fall within the scope of the arbitration agreement, and the second condition is satisfied.

IV.    **THE "ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT OF 2021" IS NOT APPLICABLE TO PLAINTIFFS' CLAIMS.**

The *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021*

---

[33] *In re Cox Enterprises*, 835 F.3d 1195, 1201 (10th Cir. 2016) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584–85 (1960)); *Sanchez*, 762 F.3d at 1147–48 (quotation omitted).
[34] *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25; *BOSC, Inc.*, 853 F.3d at 1170 (quotation omitted); *Sanchez*, 762 F.3d at 1146 (quotation omitted); *Okwale v. Corinthian Colleges*, No. 1:14-CV-135-RJS, 2015 WL 730015, at *2 (D. Utah Feb. 19, 2015) (unpublished).
[35] *See* Complaint, Docket 2, at ¶¶ 231-237.
[36]

("EFASASHA"), Section 3, states regarding applicability, that the Act applies "to any dispute or claim that arises or accrues on or after the date of enactment of this Act."[37] Plaintiffs argue that EFASASHA is applicable because, in their opinion, their claims did not arise or accrue until they received their Right to Sue letters from the UALD/EEOC on March 24, 2022, after the Act was signed into law on March 3rd by President Biden.

But a Title VII claim for constructive discharge (as Plaintiff Silverman is claiming), arises or accrues when the employee resigns as a result of what she deems to be intolerable discrimination.[38] Silverman's resignation date was July 1, 2021, meaning that her claim arose and accrued well before the effective date of EFASASHA. Poole's claim accrued, at the latest, when he was terminated on June 4, 2021,[39] again, well before EFASASHA'S effective date. Therefore, EFASAHA is inapplicable, and the Court should require that Plaintiffs arbitrate their claims.[40]

## CONCLUSION

The claims in Plaintiffs' Complaint are subject to mandatory arbitration. Therefore, DiscGenics respectfully requests that this Court compel arbitration according to the terms of the

---

[37] ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT OF 2021, PL 117-90, March 3, 2022, 136 Stat 26, § 3.

[38] *Green v. Brennan*, 578 U.S. 547, 556 (2016).

[39] *See, e.g., Lister v. City of Wichita, Kansas*, 666 F. App'x 709, 712 (10th Cir. 2016)(observing that Plaintiff's Title VII claims accrued no later than the date of his termination).

[40] See, e.g., Gibson v. Giles Chem. Corp., No. 1:20-CV-394-MOC-WCM, 2022 WL 1446805, at *1 (W.D.N.C. May 6, 2022)("The Act, however, applies to only to any dispute or claim arising or accruing on or after the date of its enactment. Plaintiff's claims arose well before March 3, 2022.)

arbitration provisions contained in the parties' agreements and dismiss the Complaint, or in the alternative, stay these proceedings pending the outcome of the arbitrations.

DATED July 26, 2022.

STRONG & HANNI

*/s/Michael D. Stanger*

Michael D. Stanger
Jessica J. Johnston
Ellen H. Welch
*Attorneys for Defendant DiscGenics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that July 26, 2022, a true and correct copy of the foregoing

**DEFENDANT'S MOTION TO COMPEL ARBITRATION** was served by the method

indicated below, to the following:

| | | |
|---|---|---|
| Lauren I. Scholnick | ( X ) | Electronic Filing |
| STRINDBERG SCHOLNICK BIRCH HALLAM | ( ) | Email |
| HALSTAD THORNE | ( ) | U.S. Mail, Postage Prepaid |
| 40 South 600 East | ( ) | Hand Delivered |
| Salt Lake City, Utah 84106 | ( ) | Overnight Mail |
| Telephone: 801.359.4169 | ( ) | Facsimile |
| Facsimile: 801.359.4313 | | |
| lauren@utahjobjustice.com | | |
| *Attorney for Plaintiffs* | | |

| | | |
|---|---|---|
| Julia Elmaleh-Sachs | ( X ) | Electronic Filing |
| Susan K. Crumiller | ( ) | Email |
| CRUMILLER P.C. | ( ) | U.S. Mail, Postage Prepaid |
| 16 Court St., Ste 2500 | ( ) | Hand Delivered |
| Brooklyn, NY 11241 | ( ) | Overnight Mail |
| Telephone: 212.390.8480 | ( ) | Facsimile |
| julia@crumiller.com | | |
| susan@crumiller.com | | |
| *Attorney for Plaintiffs* | | |

_/s/ Ali Hansen_