Michael D. Stanger (#10406)
Jessica J. Johnston (#14687)
Ellen H. Welch (#18126)
STRONG & HANNI
102 S. 200 E Suite 800
Salt Lake City, UT 84111
Telephone:   (801) 532-7080
Facsimile:    (801) 596-1508
mstanger@strongandhanni.com
jjohnston@strongandhanni.com
ewelch@strongandhanni.com

*Attorneys for Defendant DiscGenics, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LARA SILVERMAN, PhD and JEFFREY POOLE,<br><br>Plaintiffs,<br><br>vs.<br><br>DISCGENICS, INC.,<br><br>Defendants. | **MOTION TO DISMISS PLAINTIFFS' POST-EMPLOYMENT RETALIATION CLAIMS**<br><br>Case No. 2:22-cv-00354-DBP<br><br>Judge Jill Parrish |

Defendant DiscGenics, Inc. hereby moves, pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the remaining post-employment retaliation claims that were not subject to the Court's recent order compelling arbitration of most of Plaintiffs' claims.  Specifically, the adverse actions alleged by Plaintiffs in their *First Amended Complaint* (the "FAC") are not of the kind that state plausible unlawful post-employment retaliation claims against Defendant. Consequently, the remaining portion of the FAC fails to state a claim should be dismissed.

## STATEMENT OF FACTS

1. On October 5, 2022, Plaintiffs filed the FAC.[1]

2. The FAC added three new allegations of post-employment retaliation against Plaintiffs:

> *231. As an owner of 2,500 shares of DiscGenics Series C preferred shares which were purchased by Poole in August 2020, Poole received shareholder notifications throughout the entirety of his employment with Defendant, as required by the shareholder agreement between Poole and Defendant. Since the termination of his employment, Poole has not received a single shareholder notification.*
>
> *232. Meanwhile, upon information and belief, other shareholders have received at least four regular quarterly notifications since June 2021, including one as recently as August 18, 2022. This indicates that Defendant has deliberately withheld these notifications from Poole, as a retaliatory measure.*
>
> *233. In or around September 2021, Flanagan told third party consultant Chris Lyons, without any basis whatsoever, that "the more [he] learned, the more [he] was convinced that [Plaintiffs] were having an inappropriate relationship."*
>
> *234. On August 12, 2022, Defendant threatened to file "counterclaims for defamation and/or tortious interference" against Plaintiffs on the basis of unspecified statements by Plaintiffs. When asked to identify the allegedly defamatory statements, Defendant failed and refused to do so.* [2]

3. In their Second Cause of Action, Plaintiffs allege retaliation in violation of Title VII, citing the above as instances of such retaliation.[3]

4. On March 13, 2023, this Court entered a *Memorandum Decision and Order Granting Motion to Compel Arbitration*, which ordered the parties to proceed to arbitration on the Plaintiffs' pretermination claims.[4]

5. The Court indicated that in lieu of filing an answer to the FAC, Discgenics could

---

[1] See *First Amended Complaint* (Docket No. 34)
[2] *Id.* at ¶¶ 231-34.
[3] *Id.* at ¶¶ 242-47
[4] Docket No. 37.

bring a motion to dismiss with respect to the post-termination claims.[5]

## LEGAL STANDARD

Under FED. R. CIV. P. 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."[6] To survive such a motion, a complaint must contain "'enough facts to state a claim to relief that is plausible on its face.'"[7] Although Plaintiff does not need to establish a *prima facie* case in his complaint, "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[8] Where a plaintiff fails to allege sufficient facts to "nudge [their] claims across the line from conceivable to plausible," the claims must be dismissed.[9]

## ARGUMENT

### I. THE FAC DOES NOT PLEAD PLAUSIBLE ADVERSE EMPLOYMENT ACTIONS SUFFICIENT TO SUSTAIN A RETALIATION CLAIM.

It is axiomatic that a Title VII retaliation plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination; (2) her employer took a materially adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse action.[10]

In the context of post-employment retaliation claims, the second element only includes "adverse employment actions" that interfere with the individual's prospects for employment, such

---

[5]

[6] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[7] *Wade v. Meridias Capital, Inc.*, No. 2:10CV998 DS, 2011 WL 997161, *1 (D. Utah March 17, 2011) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[8] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[9] *Southam v. Lehman Bros. Bank FSB*, No. 2:10-CV-45 TS, 2010 WL 3258320, *1 (D. Utah Aug. 17, 2010) (quoting *Twombly*, 550 U.S. at 570).

[10] *See, e.g., Bekkem v. Wilkie,* 915 F.3d 1258, 1267 (10th Cir. 2019); *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004).

as giving an unjustified negative job reference, refusing to provide a job reference, or informing an individual's prospective employer about the individual's protected activity.[11] Because none of the alleged post-termination actions by Discgenics have been pleaded as interfering with the Plaintiffs' employment prospects, the FAC does not state a claim for post-employment retaliation.

The Tenth Circuit "will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action,"[12] because "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."[13] Accordingly, a plaintiff must show that the alleged adverse action caused more than "*de minimis* harm" to her future employment prospects.[14]

For example, in *Berry v. Stevinson Chevrolet,*[15] the Court held that malicious prosecution could constitute adverse action, stating that "a criminal trial, such as that to which Mr. Reynolds was subjected, is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects."[16]

---

[11] *See, e.g., Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) (explaining that post-employment retaliation may be considered discriminatory if the actions "hurt a plaintiff's employment prospects."); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (finding that negative job references were retaliatory); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1164-65 (10th Cir. 1977) (upholding finding of retaliation where former employer informed prospective employer that plaintiff had filed an EEOC Charge); *see also Boandl v. Geithner,* 752 F.Supp.2d 540, 568 (E.D.Pa. 2010) ("In essence, post-employment retaliation must involve … some harm to an employee's employment opportunities.") (cleaned up).

[12] *Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 (10th Cir. 1998) (quoting *Crady v. Liberty Nat'l Bank–Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

[13] *MacKenzie v. City & Cnty. of Denver,* 414 F.3d 1266, 1279 (10th Cir. 2005), abrogated on other grounds by *Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166 (10th Cir. 2018) *(*quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996)); *see also James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 377 (4th Cir.2004) (holding that "an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action")

[14] *See*, *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004)

[15] 74 F.3d 980 (10th Cir. 1996)

[16] *Id.* at 986.

In contrast, the plaintiff in *Aquilino v. Univ. of Kan.*,[17] was unable to state a claim for retaliation based on her theory that the university's denial of an appointment as a research associate constituted an adverse action. Instead, the Tenth Circuit found that the alleged harm to the plaintiff's future employment prospects was speculative and rested solely in her untested belief in an alternative career path as a private scholar.[18]

Here, the FAC alleges that Discgenics failed to send Poole certain shareholder notifications, that Mr. Flanagan made a comment to a third-party consultant about Plaintiffs' relationship, and that Discgenics' attorney sent a letter to Plaintiffs' counsel cautioning them about public statements.[19] In their retaliation cause of action, Plaintiffs state that the alleged retaliatory actions by Discgenics caused them "emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, pain and suffering and economic damages, including lost wages."[20] The FAC is silent as to any actual interference with future job prospects or opportunities, and the suggestion that the challenged actions will have employment ramifications is not plausible. Accepting Plaintiffs' allegations as true, none of them rise to the level of adverse action necessary to sustain a retaliation claim.

There is no indication that Plaintiff Poole is somehow less employable without the shareholder newsletters and the information contained therein.

There is no indication that counsel's letter cautioning Plaintiff about the content of public statements regarding Discgenics somehow hamstrung them in their respective job hunts, or was even published to third parties.

And the statement by Mr. Flanagan to Discgenics' own consultant, Mr. Lyons, is not

---

[17] 268 F.3d 930 (10th Cir. 2001).
[18] *Id.* at 936.
[19] FAC at ¶¶ 231-34.
[20] *Id.* at ¶ 245

plausibly connected to any adverse employment action.  There is no indication that Mr. Lyons had job openings for which he was considering either of the Plaintiffs, but changed his mind due to Mr. Flanagan's alleged statement.

Plaintiffs do not even attempt to argue in the FAC that there has been even a *de minimis* impact on their potential job prospects as a result of the challenged post-employment actions by Discgenics.  As a result, they fail to allege plausible adverse employment actions, and fail to state a claim for post-employment retaliation.

## CONCLUSION

For the foregoing reasons, DiscGenics respectfully requests that its motion be granted and that all causes of action asserted against it as it relates to post-employment be dismissed.

DATED this 4th day of April, 2023.

                        STRONG & HANNI

                        */s/Michael D. Stanger*
                        Michael D. Stanger
                        Jessica J. Johnston
                        Ellen H. Welch
                        *Attorneys for Defendant DiscGenics, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th of April 2023, a true and correct copy of the foregoing

**MOTION TO DISMISS PLAINTIFFS' POST-EMPLOYMENT RETALIATION CLAIMS**

was served by the method indicated below, to the following:

| | | |
|---|---|---|
| Lauren I. Scholnick | (X) | Electronic Filing |
| STRINDBERG SCHOLNICK BIRCH HALLAM | ( ) | Email |
| HALSTAD THORNE | ( ) | U.S. Mail, Postage Prepaid |
| 40 South 600 East | ( ) | Hand Delivered |
| Salt Lake City, Utah 84106 | ( ) | Overnight Mail |
| Telephone: 801.359.4169 | ( ) | Facsimile |
| Facsimile: 801.359.4313 | | |
| lauren@utahjobjustice.com | | |
| *Attorney for Plaintiffs* | | |

| | | |
|---|---|---|
| Julia Elmaleh-Sachs | (X) | Electronic Filing |
| Susan K. Crumiller | ( ) | Email |
| CRUMILLER P.C. | ( ) | U.S. Mail, Postage Prepaid |
| 16 Court St., Ste 2500 | ( ) | Hand Delivered |
| Brooklyn, NY 11241 | ( ) | Overnight Mail |
| Telephone: 212.390.8480 | ( ) | Facsimile |
| julia@crumiller.com | | |
| susan@crumiller.com | | |
| *Attorneys for Plaintiffs* | | |

*/s/ Kaylee Haines*